UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| SAMARIDIN HASANOV, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:26-cv-00714-JRO-MJD |
| | ) | |
| TODD BLANCHE U.S. Attorney General, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Samaridin Hasanov's petition for a writ of habeas corpus seeks release from federal immigration detention. For the following reasons, his petition is **DENIED**.

**I. FACTS**

Petitioner is a citizen and native of Tajikistan. Dkt. 13-1 at 1, 6. He applied for admission at a port of entry in 2023. *Id.* at 1. Immigration officials determined that he was inadmissible but had a credible fear of being tortured or persecuted if he returned to Tajikistan. *Id.* The government initiated a removal proceeding but also permitted Petitioner to enter the United States on humanitarian parole for an unspecified period. *Id.* at 1, 7.

On October 20, 2026, Indiana State Police detained Petitioner for a traffic stop and contacted U.S. Immigration and Customs Enforcement ("ICE"). *Id.* at 6. The same day, ICE officials executed a notice that Petitioner's parole was revoked, but they did not serve the notice until November 11, two weeks after

Petitioner filed this habeas petition. *Id.* at 9. An ICE official issued an administrative arrest warrant on October 21. *Id.* at 4. Petitioner remains in ICE detention.

## II. ANALYSIS

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Petitioner argues that his detention without consideration of bond violates the Immigration and Nationality Act ("INA") and the Fifth Amendment's Due Process Clause. As a threshold matter, he also argues that the government did not lawfully revoke his parole.

### A. Parole Revocation

Immigration regulations authorize the government to terminate an alien's humanitarian parole upon written notice and "upon accomplishment of the purpose for which parole was authorized or when in the opinion of" a designated official, "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States . . . ." 8 C.F.R. § 212.5(e)(2)(i). Petitioner does not dispute that the revocation notice he received on November 11 was issued by a person with authority to revoke his parole. He does not argue that the revocation notice is deficient in any substantive respect. Rather, he notes—correctly—that the revocation notice was served weeks after he was arrested. Respondents offer no evidence that Petitioner's parole was time limited, and they do not argue that his parole expired due to passage of time. *See* 8 C.F.R. § 212.5(e)(1). Therefore, Petitioner's parole could be terminated only "upon written

notice." *Id.* Because he did not receive the notice until weeks after his arrest, this must mean he was detained while he was the beneficiary of an active grant of parole.

Nevertheless, the question before the Court is not whether Petitioner was *arrested* lawfully or even whether his detention has complied with the law since his arrest. "[T]he purpose of a habeas corpus action is not to compensate the petitioner for a past injury or punish the respondent for wrongdoing; it is solely to determine whether the petitioner's *current* detention is lawful." *Feliciano v. Warden*, No. 3:26-cv-1108-CCB-SJF, 2026 WL 2525659, at *3 (N.D. Ind. Aug. 26, 2026) (emphasis added) (citing *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923)).

At this point, it is undisputed that an authorized official has taken the prescribed actions to lawfully terminate Petitioner's parole. If there is a remedy for his previous detention while on parole, he cannot achieve it through a habeas petition.

**B. Mandatory Detention**

Petitioner next argues that Respondents are violating the INA by detaining him without consideration of bond. Respondents insist that Petitioner is subject to mandatory detention for the duration of his removal proceeding pursuant to 8 U.S.C. § 1225(b)(2)(A). Petitioner argues instead that the government's authority to detain him comes from 8 U.S.C. § 1226(a), which makes him eligible for discretionary release on bond.

It is undisputed that at the time Petitioner presented at a port of entry and was paroled he was an "applicant for admission" under the INA. As this Court has explained elsewhere, 8 U.S.C. § 1225(a)(1) "defines an 'applicant for admission' as an alien 'who arrives in the United States' or who is 'present in' the country but 'has not been admitted.'" *Vallejos- Hernandez v. Olson*, No. 2:26-cv-00398-JRO-MG, 2026 WL 1840067, at *2 (S.D. Ind. June 26, 2026). "The Supreme Court has explained that 'applicants for admission fall into one of two categories'—'those covered by § 1225(b)(1) and those covered by § 1225(b)(2).'" *Id.* (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018)). Petitioner was not covered by Section 1225(b)(1) because he was not subject to "expedited removal." *See id.* Instead, he was subject to Section 1225(b)(2), which "serves as a catchall provision that applies to all applicants for admission not covered by Section 1225(b)(1)." *Id.* (quoting *Jennings*, 583 U.S. at 287).

Section 1225(b)(2)(A) generally requires mandatory detention for aliens who are "applicants for admission":

> Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). In other words, detention is mandatory pending "the usual removal process," which "involves an evidentiary hearing before an immigration judge" where "an alien may attempt to show that he or she should not be removed."

*Id.* (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020)). However, the Seventh Circuit determined that 8 U.S.C. § 1225(b)(2)(A)'s

mandatory detention requirement applies only to aliens who are also "seeking admission" to the United States and not all aliens who merely fit the statutory definition of "applicants for admission." As the Seventh Circuit said, "Aliens present in the country without admission and not 'seeking admission' fall under Section 1226, not Section 1225(b)(2)(A), and are eligible for bond hearings subject to the INA's other requirements." *Cirrus Rojas v. Olson*, 183 F.4th 909, 915 (7th Cir. 2026). "Admission means 'lawful entry . . . into the United States after inspection and authorization.'" *Id.* at 918 (quoting *Sanchez v. Mayorkas*, 593 U.S. 409, 411 (2021)). The Seventh Circuit further held that the ordinary meaning of "seeking admission" cannot, as a factual matter, describe aliens who "entered the United States without admission or parole" and are thus categorically "inadmissible," because "no amount of legal maneuvering allows them to go back in time and make [their] initial entry lawful." *Id.* at 920 (quoting *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1239 (10th Cir. 2026)).

The Seventh Circuit's holding in *Cirrus Rojas* does not apply to Petitioner because he entered the United States as a humanitarian parolee after presenting himself at a port of entry. Accordingly, he is not excluded from the Seventh Circuit's definition of "seeking admission" at the time of his entry.

Instead, as Respondents argue, Petitioner remains an applicant for admission who is seeking admission under the terms of 8 U.S.C. § 1182(d)(5)(A). Dkt. 8 at 3–8. That statute says the Secretary of Homeland Security may permit an alien—specifically, an "alien applying for admission"—to enter the United States on parole. "[W]hen the purposes of such parole shall, in the opinion of the

Secretary of Homeland Security, have been served the alien *shall forthwith return or be returned to the custody from which he was paroled.*" 8 U.S.C. § 1182(d)(5)(A) (emphasis added). Additionally, the former parolee "shall continue to be dealt with in the same manner as that of *any other applicant for admission* to the United States." *Id.* (emphasis added).

Petitioner argues that he is no longer "seeking admission" and therefore is not subject to Section 1225(b)(2)(A)'s mandatory detention scheme as interpreted by *Cirrus Rojas*. But this argument neglects Section 1182(d)(5)(A)'s directive that a parolee "return or be returned to the custody from which he was paroled" upon revocation. Petitioner was granted parole after he presented for inspection and sought admission at a port of entry. Indeed, his parole was statutorily authorized because he was an "alien *applying for admission*." 8 U.S.C. § 1182(d)(5)(A) (emphasis added). The INA directs that, upon revocation of his parole, he must "be returned to the custody from which he was paroled" (namely, an alien applying for admission) and "continue to be dealt with" as an applicant for admission. Due to the termination of his parole, and by operation of law, Petitioenr is subject to mandatory detention without bond pursuant to Section 1225(b)(2)(A) as an applicant for admission who is seeking admission.

Petitioner also correctly notes that he was initially arrested pursuant to an administrative warrant citing Section 1226(a) as its authority. *See* dkt. 13-1 at 4. Again, though, the question before the Court is whether he is *currently* detained consistent with the Constitution and laws of the United States.

Petitioner's parole has been lawfully revoked. By operation of law, he is currently detained pursuant to § 1225(b)(2)(A) and therefore without possibility of parole.

## C. Due Process

Finally, Petitioner argues that his detention without a bond hearing and the revocation of his parole violate the Fifth Amendment's due process clause.

### 1. Substantive Due Process

The Due Process Clause applies to aliens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). As the Seventh Circuit recently said, "[a]rticulating a substantive due process right requires 'a careful description of the asserted fundamental liberty interest' claimed to be violated." *Doe v. Sloan*, 172 F.4th 955, 958 (7th Cir. 2026) (cleaned up) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) and *Christensen v. Cnty. of Boone*, 483 F.3d 454, 462 (7th Cir. 2007)). The "specific interest must be grounded in '[o]ur Nation's history, legal traditions, and practices.'" *Id.* (quoting *Glucksberg*, 521 U.S. at 721). The Seventh Circuit cautioned that "the 'scope of substantive due process is very limited,' and that judges should be 'reluctant to expand the concept.'" *Id.* (quoting *Campos v. Cook Cnty.*, 932 F.3d 972, 975 (7th Cir. 2019)).

Petitioner does not carefully describe a fundamental liberty interest. Rather, he states only that he "has a fundamental interest in liberty and being free from official restraint." Dkt. 1 ¶ 48.

Even assuming (without deciding) that Petitioner *has* correctly articulated a fundamental liberty interest, that interest is not violated here. In fact, Petitioner is free to live at liberty without detention, just not in this country. Under similar circumstances, the Seventh Circuit has held that the operative liberty interest "is not liberty in the abstract, but liberty *in the United States* by someone no longer entitled to remain in this country but eligible to live at liberty in his native land." *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999); *cf. Bolante v. Keisler*, 506 F.3d 618, 621 (7th Cir. 2007) (denying Eighth Amendment bail to alien subject to removal because he was not lawfully admitted to the United States).

Accordingly, Petitioner's liberty interest is constitutionally circumscribed by the procedures mandated by the INA, "[g]iven the sweeping powers Congress possesses to prescribe the treatment of aliens." *Parra*, 172 F.3d at 958 (citing *Fiallo v. Bell*, 430 U.S. 787, 792 (1977)); *accord Rodriguez v. Olson*, 814 F. Supp. 3d 945, 963 (N.D. Ill. 2026) ("Under *Parra*, because petitioner does not attempt to argue that he is 'entitled to remain in' the United States, his private interest in release pending his removal proceedings is relatively minimal."). The Seventh Circuit's narrower view of Petitioner's liberty interest as an alien who is not lawfully present was upheld by the Supreme Court in *Demore v. Kim*. 538 U.S. 510, 516 (2003) (favorably citing *Parra*). Petitioner's detention therefore does not violate substantive due process. *E.g.*, *Sebastian v. Olson*, No. 2:26-cv-00324-JRO-MKK, 2026 WL 1683618, at *10 (S.D. Ind. June 10, 2026).

### 2. Procedural Due Process

The Supreme Court has held that "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Demore*, 538 U.S. at 531. That holding settles any procedural due process claim.

The Supreme Court already anticipated and rejected any notion that Petitioner has a constitutional right to an individualized bond hearing: "[W]hen the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Demore*, 538 U.S. at 528. Applied to Petitioner, this means that Respondents do not have to justify mandatory detention on a case-by-case basis. Respondents may enforce the policy Congress already adopted when it enacted the mandatory detention provision in Section 1225(b)(2)(A) without an individualized bond hearing.

Petitioner cites *Zadvydas*, 533 U.S. at 701, *see* dkt. 1 at ¶ 7, but that case is distinguishable. There, the Supreme Court addressed whether a post-removal-period detention statute authorized potentially indefinite detention. In construing the statute to reject that conclusion, the Supreme Court specifically distinguished the due process issues inherent in the petitioner's indefinite detention from "detention pending a determination of removability," which has an "obvious termination point." *Zadvydas*, 533 U.S. at 697. Petitioner's detention here is a detention pending removal proceedings. Thus, it does not implicate the due process concerns addressed in *Zadvydas*.

And even in cases like *Zadvydas*—where the Supreme Court held that removal is "no longer practically attainable," *id.* at 690, thereby eliminating the premise for detention pending removal—detention for up to six months was presumptively constitutional, *id.* at 701. Petitioner has been detained by ICE pending his removal proceedings for one month. Accordingly, his current detention by ICE does not violate his due process rights. *E.g.*, *Sebastian*, 2026 WL 1683618, at *10.

## III. CONCLUSION

Samaridin Hasanov's petition for a writ of habeas corpus is **DENIED**. The **clerk is directed** to enter **final judgment**.

**SO ORDERED.**

Date: 11/20/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

Paul Umbaugh, IV
DOJ-USAO
paul.umbaugh@usdoj.gov

Marina Volshansky
Mayzel Law Group
marina.volshansky@gmail.com